UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARIA KARR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-CV-01229-SPM |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Leland Dudek, Acting Commissioner of Social Security (the "Commissioner") denying the applications of Plaintiff Maria Karr ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 6). For the reasons stated below, I will reverse the Commissioner's denial of Plaintiff's applications and remand the case for further proceedings.

---

[1] Leland Dudek is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. **STANDARD FOR DETERMINING DISABILITY UNDER THE ACT**

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20

2

C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2020, Plaintiff applied for DIB, and on October 22, 2020, Plaintiff applied for SSI, alleging that she had been unable to work since October 26, 2019, due to spinal fusion and peripheral neuropathy. (Tr. 332-36, 340-45, 378-84). Her applications were denied initially and on reconsideration (Tr. 183-188, 191-196). Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") (Tr. 197-98).

The relevant medical records are summarized in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 10-1) and Defendant's Response (ECF No. 13-1), and the following facts are taken from those statements excepts as otherwise noted. Briefly, the medical records submitted to the ALJ show that Plaintiff was in a motor vehicle accident in January 2019, after which she had neck and arm pain and stiffness. She received injections and physical therapy. A September 2019 MRI showed disc protrusions at C5-C6 and C6-C7. In January 2020, she had an anterior cervical discectomy and C5/C6 fusion. In March 2020, she reported that her arm pain had been completely resolved and her neck pain had been improved; however, she still had some persistent neck pain and still had occasional numbness in her thumb. In May 2020, she reported almost no neck pain or arm pain. However, beginning in July 2020, her neck and arm pain returned and remained over the next several months. In August 2020, her doctor considered pseudoarthrosis but noted that she was not quite far out from surgery to make that diagnosis; he also noted the

4

possibility that other discs or facet joints could be a problem. (Tr. 672-73). Her doctor recommended a bone stimulator, which she used. In February 2021, she reported that she had had almost complete resolution of her neck and arm pain and that although it intermittently bothered her, she was overall doing very well. However, in September 2021, she reported that her symptoms had returned, with neck pain, some arm pain, and arm numbness. (Tr. 771). She had some positive findings on examination (a positive Spurling's test on the right side, a positive Neer's, a positive Hawkins for pain down the right arm, and a positive Tinel's at the cubital tunnel). (Tr. 773). X-rays showed some amount of adjacent segment disease at the level below. Her doctor considered pseudoarthrosis, as well as peripheral neuropathy, and he ordered a CT scan, and MRI, and an EMG. (Tr. 774). The September 2021 MRI showed, *inter alia*, "stable mild degenerative disc disease at C6-7 without spinal canal stenosis." (Tr. 786). In December 2021, she reported unchanged symptoms since September. (Tr. 779). She again had several positive findings on examination. (Tr. 781). Her doctor did not recommend any operative intervention but recommended non operative care, which she was "quite interested in" (Tr. 782). In March 2022, she was seen again for management of neck pain radiating into the right arm/hand. She reported her pain was a 9/10 and increased when working on house chores and that her activities of daily living were difficult, but manageable on her own. Plaintiff was started on Baclofen. The record before the ALJ did not contain any medical evidence dated after March 2022.

The record contains no opinion evidence from any treating or examining physicians. On February 5, 2021, medical consultant Harry Cole, M.D., reviewed the records available at the time (which were dated through December 2020) and opined that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk a total of about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; frequently climb ramps, stairs,

5

ladders, ropes, scaffolds; balance with no limitation; and occasionally stoop, kneel, crouch and crawl. (Tr. 115-18). June 8, 2021, medical consultant Dennis McGraw, D.O., reviewed the records available at the time (which were dated through February 2021) and offered a similar opinion except that he found she could only occasionally climb ramps and stairs, could only occasionally balance, and could never climb ladders, ropes, or scaffolds. (Tr. 149-155).

At the August 3, 2022, hearing before the ALJ, Plaintiff testified that her symptoms improved for a few months after her January 2020 surgery but then returned; that she had constant pain; that the pain was in her neck and went down to her arms; that she had numbness in her right arm; that it was painful to turn her neck; that she could barely move her neck and arms; that every time she tried to lift something heavy, it hurts; and that that she could not lift anything above her shoulders. (Tr. 95-97, 100-02). She testified that at the time of the hearing, she had no health insurance. (Tr. 102).

On August 17, 2022, the ALJ entered a decision finding Plaintiff not disabled through the date of the decision. (Tr. 48-67). Applying the foregoing five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 26, 2019, the alleged onset date; that Plaintiff had the severe impairment of residuals of a cervical fusion; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 54-55). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she] cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] cannot reach overhead but can frequently reach in all other directions. She must avoid concentrated exposure to extreme cold and wetness and avoid hazards such as unprotected heights and dangerous machinery.

6

(Tr. 55). At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work. (Tr. 60). At Step Five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as cleaner, hand packer, and production worker. (Tr. 60-61). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from October 26, 2019, through the date of the decision (August 22, 2022). (Tr. 61).

Plaintiff subsequently submitted additional records to the Appeals Council showing that on December 2, 2022 (about three and a half months after the ALJ's decision), Plaintiff underwent a C6-7 anterior diskectomy and total disc arthroplasty. (Tr. 13). The pre-operative diagnosis was "C6-7 cervical disc herniation and cervical radiculopathy." The indications for the procedure were as follows:

> Ms. Karr is a 53-year-old female who developed the onset of pain in her neck with radiation into her arm. She had undergone a C5-6 fusion which took away a portion of her pain, but she has still had residual neck pain with some radicular features. She was interested in further treatment.

(Tr. 13).

On August 3, 2023, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). The Appeals Council stated, "You submitted 36 pages of records from St. Louis Spine and Orthopedics, dated December 2, 2022. The Administrative Law Judge decided your case through August 22, 2022. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before August 22, 2022." (Tr. 2). The Appeals Council did not include these records in its list of exhibits. (Tr. 6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

7

### III.     STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir.2004); *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir.1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

### IV.     DISCUSSION

Plaintiff argues that the Appeals Council erred when it found that the new evidence Plaintiff had submitted (evidence of a second cervical surgery on December 2, 2022) did not relate to the period at issue, which ended August 22, 2022. Plaintiff also argues that the evidence as a

8

whole, including the evidence of a second cervical surgery, supports a finding that Plaintiff is limited to no more than sedentary work and cannot handle or reach with her left arm.

The Appeals Council must review the ALJ's decision if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). "Whether [additional evidence submitted to the Appeals Council] is new, material and related to the relevant period is a question of law reviewed de novo." *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). *See also Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000) (whether evidence submitted to the Appeals Council is new, material, and related to the period before the ALJ's decision "is a question of law this court reviews *de novo*"); *Hennemann v. Kijakazi*, No. 4:21-CV-00038-NCC, 2022 WL 4093938, at *3-*4 (E.D. Mo. Sept. 7, 2022) (reviewing de novo the Appeals Council's finding that additional evidence did not relate to the adjudicated period; remanding because it found that decision was incorrect); *Rowe v. Kijakazi*, No. 1:20-CV-00260-AGF, 2022 WL 3541686, at *6 (E.D. Mo. Aug. 18, 2022) (same); *Lucas v. Saul*, No. 2:18-CV-45-CDP, 2019 WL 4221519, at *3 (E.D. Mo. Sept. 5, 2019) (same).[2]

---

[2] Defendant suggests that the Court should affirm the decision of the ALJ because even when the new evidence is considered, the ALJ's decision is supported by substantial evidence on the record as a whole, citing *Kitts v.Apfel*, 204 F.3d 785, 786 (8th Cir. 2000) ("When the Appeals Council has considered new and material evidence and declined review, [the Court] must decide whether the ALJ's decision is supported by substantial evidence in the whole record, including the new evidence."). The Court acknowledges that this is the appropriate standard of review where "it is clear that the Appeals Council has considered newly submitted evidence" and decided that it would not affect the ALJ's decision. *See Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). Here, however, it appears that Appeals Council did not "consider" the evidence or make an assessment of whether it might change the ALJ's decision; instead, the Appeals Court declined to consider it simply because it was dated after the relevant period. Under similar circumstances, courts have found that the Appeals Council did not "consider" the evidence and have reviewed the decision to decline to consider the evidence rather than reviewing whether the ALJ's decision continues to be supported by substantial evidence even when the evidence is considered. *See Rowe v. Kijakazi*, No. 1:20-CV-00260-AGF, 2022 WL 3541686, at *6 (E.D. Mo. Aug. 18, 2022) (rejecting the

After review of the record, the Court finds that the Appeals Council's conclusion that the evidence of Plaintiff's December 2022 surgery does not relate to the adjudicated period is incorrect. It appears that the Appeals Council relied solely on the date of the additional evidence in deciding that it did not relate to the period at issue. *See* Tr. 2 ("You submitted 36 pages of records from St. Louis Spine and Orthopedics, dated December 2, 2022. The Administrative Law Judge decided your case through August 22, 2022. This additional evidence does not relate to the period at issue."). However, it is well established that the medical evidence dated after the relevant period may provide information about a claimant's condition during the relevant period. *See Roberson v. Astrue*, 481 F.3d 1020, 1026 (8th Cir. 2007) ("Medical evidence can, of course, provide information about a claimant's condition at an earlier date."); *Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000) ("Although some of the medical records submitted to the Appeals Council either pre-dated or post-dated the relevant time period, the evidence related to conditions that existed during that period. The timing of an examination is not dispositive of whether evidence is material; medical evidence obtained after an ALJ decision is material if it relates to the

---

Commissioner's argument that the Appeals Council considered evidence dated after the ALJ's decision where "the Appeals Council did not determine whether [the evidence] would have changed the ALJ's opinion" but instead "found the evidence does not relate to the period at issue"; finding the Appeals Council erred in declining to consider the evidence); *Lucas v. Saul*, No. 2:18-CV-45-CDP, 2019 WL 4221519, at *2-*4 (E.D. Mo. Sept. 5, 2019) (finding that the Appeals Council did not "consider" evidence when it acknowledged receipt of the evidence but stated that the letter did not relate to the period at issue and did not list it as additional evidence to be made part of the administrative record; stating that "because the Appeals Council did not consider this additional evidence in the first instance and did not make it a part of the administrative record, I am precluded from reviewing it here to determine if the ALJ's decision continues to be supported by substantial evidence"; finding the Appeals Council erred in failing to consider the evidence); *See also* 20 C.F.R. §§ 404.970(c), 416.1470(c)) (providing that if a claimant submits additional evidence that "does not relate to the period on or before the date of the [ALJ] hearing decision," the Appeals Council "will send [the claimant] a notice that explains why it *did not accept the additional evidence . . .*") (emphasis added). Here, as in those cases, the Court finds that its role is to review for legal error the Appeals Council's failure to consider the additional evidence.

10

claimant's condition on or before the date of the ALJ's decision"); *Hennemann v. Kijakazi*, No. 4:21-CV-00038-NCC, 2022 WL 4093938, at *4 (E.D. Mo. Sept. 7, 2022) ("Merely because the evidence was obtained after the ALJ's decision does not mean it does not 'relate to' the adjudicated period.").

A review of the additional evidence at issue shows that it relates to Plaintiff's condition before the date of the ALJ's decision. These records show that the December 2022 surgery was performed as "further treatment" for "residual neck pain with some radicular features" that continued even after "a C5-6 fusion which took away a portion of her pain." This indicates that the treatment was performed for the same condition that formed the basis for Plaintiff's claim that she was disabled during the relevant period—neck pain, radiating to her arm, that was not fully resolved by her January 2020 cervical fusion surgery. There is nothing to suggest that the December 2022 surgery was treatment for a worsening or deteriorating of that condition, or for any new condition that developed after August 2022. Additionally, the surgery was performed only three and a half months after the ALJ's decision. Together, these facts show that this evidence relates to the relevant period, and that the Appeals Council erred in declining to consider it on the basis that it did not relate to the relevant period.

The Court also finds that this error was not harmless, because it appears that this evidence was "new" and "material" and that there is a reasonable probability that it would change the outcome of the ALJ's decision. *See* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). "To be 'new,' evidence must be more than merely cumulative of other evidence in the record." *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). This second cervical surgery is certainly new and not cumulative of any other evidence in the record. "To be 'material,' the evidence must be relevant to claimant's condition for the time period for which benefits were denied" and "must not merely

11

detail after-acquired conditions or post-deterioration of a pre-existing condition." *Id.* As already discussed, the Court finds this evidence relates to Plaintiff's condition during the relevant period, and there is nothing to suggest that it addresses only a deterioration of that condition or a new condition. Finally, the Court finds there is a reasonable probability that this evidence would have changed the outcome of the ALJ's decision. This was a case with no opinion evidence from any treating or examining physician that addressed Plaintiff's ability to function despite her cervical spine pain. In making the RFC determination, the ALJ relied heavily on evidence tending to undermine Plaintiff's subjective complaints of severe and disabling neck and arm pain, including the fact that "following surgery, she was treated conservatively" and the fact that she "was not advised to undergo additional surgery." (Tr. 59). The fact that Plaintiff *did* undergo additional surgery for her neck and arm pain shortly after the decision may well have affected the ALJ's assessment of the severity and limiting effects of Plaintiff's pain during the time period prior to his decision.

V.    **CONCLUSION**

For the reasons set forth above, the Court finds that the Appeals Council erred in declining to consider the additional evidence submitted to it. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

_/s/ Shirley Padmore Mensah_  
SHIRLEY PADMORE MENSAH  
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of March, 2025.